IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

T-MOBILE NORTHEAST LLC,           *

    Plaintiff,           *

      v.           *           Civil Action No. RDB-11-729

HOWARD COUNTY           *
BOARD OF APPEALS,
                 *

    Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This action arises out of the Defendant Howard County Board of Appeals' ("the Board") denial of the Plaintiff T-Mobile Northeast LLC's ("T-Mobile") conditional use petition for the construction of a commercial communications tower and commercial antenna on the property of the Shepherd of the Glen Lutheran Church located at 14551 Burntwoods Road in Glenwood, Maryland. Specifically, T-Mobile, a wireless telecommunications service provider, alleges that the Board's decision was not supported by substantial evidence in violation of Section 332(c)(7)(B)(iii) of the Telecommunications Act of 1996 as amended ("TCA"), 47 U.S.C. § 332 (Count I) and also alleges that this decision was in violation of Maryland law (Count III). Additionally, T-Mobile claims that the Board's decision has "the effect of prohibiting the provision of personal wireless services" in violation of Section 332(c)(7)(B)(i)(II) of the TCA.

Pending before this Court are T-Mobile's Motion for Summary Judgment (ECF No. 17) and the Board's Cross-Motion for Summary Judgment (ECF No. 20).   The parties' submissions have been reviewed and a hearing was held on March 27, 2012, pursuant to Local Rule 105.6 (D. Md. 2011).   For the reasons that follow, Plaintiff T-Mobile Northeast LLC's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant Howard County Board of Appeals' Cross-Motion for Summary Judgment (ECF No. 20) is GRANTED.

BACKGROUND

On November 20, 2009, Plaintiff T-Mobile Northeast LLC ("T-Mobile"), a Delaware limited company, submitted a conditional use petition to the Howard County Hearing Authority to obtain a permit to construct a commercial communications tower and communications antenna on the property of the Shepherd of the Glen Lutheran Church in Glenwood, Maryland.   Pl.'s Compl., ¶¶ 1, 20, 35, ECF No. 1.   The proposed 100-foot concealed monopole and fenced equipment compound ("the Proposed Facility") was meant to enable T-Mobile to close the alleged significant gap in service coverage occurring in the area "along Burntwoods Road, Danmark Drive, Sharp Road, Roscommon Drive and Hobbs Road, as well as in the developed surrounding residential neighborhoods." *Id.* ¶¶ 14, 21.   As the Proposed Facility was to be located in a Rural Residential-Density Exchange Option ("RR-DEO") Zoning District, T-Mobile's application was required to comply with the standard for conditional use permits set forth in Section 131.N.14 of the Howard County

2

Zoning Regulations ("Zoning Regulations" or "HCZR").  *Id.* ¶¶ 29-34.  Specifically, with

respect to communication towers or antennas, the Zoning Regulations provide that:

> . . . (1) An applicant for a new communication tower shall demonstrate
> that a *diligent effort* has been made to locate the proposed
> communication facilities on a government structure or, on an existing
> structure or within a non-residential zoning district, and that due to
> valid considerations, including physical constraints, and economic or
> technological feasibility, no appropriate location is available.   The
> information submitted by the applicant shall include a map of the area
> to be served by the tower, its relationship to other antenna sites in the
> petitioner's network, and an evaluation of existing buildings taller than
> 50 feet, communication towers and water tanks within one-half mile of
> the proposed tower.
> (2) New communication towers shall be designed to accommodate
> antennas for more than one user, unless the applicant demonstrates
> why such design is not feasible for economic, technical or physical
> reasons.   Unless collocation has been demonstrated to be infeasible,
> the conditional use plan shall delineate an area near the base of the
> tower to be used for the placement of additional equipment buildings
> for other users. . . .

HCZR § 131.N.14.b (emphasis added).   The Zoning Regulations also require an

applicant to demonstrate that "[t]he ingress and egress drives will provide safe access

with adequate sight distance, based on actual conditions, and with adequate

acceleration and deceleration lanes where appropriate."   HCZR § 131.B.2.d.

Furthermore, "[t]he applicant . . . shall have the burden of proof, which shall be by a

preponderance of the evidence and which shall include the burden of going forward

with the evidence . . ."  HCZR § 131.G.

After a review of the T-Mobile application documents and evidence, the Howard

County Department of Planning and Zoning issued a Technical Staff Report in support of

granting T-Mobile's request.  Pl.'s Compl., ¶ 37.  A public hearing was then held on March 1,

3

2010 before the Howard County Board of Appeals Hearing Examiner. *Id.* ¶ 38. The Hearing Examiner issued an order denying T-Mobile's application but indicating that T-Mobile had complied with Section 131.N.14.b.(1) of the Zoning Regulations. *Id.* ¶ 39. As a result, T-Mobile filed an appeal petition of the Hearing Examiner's decision with the Howard County Board of Appeals ("the Board"). *Id.* ¶ 40.

The Board conducted a hearing over three days, on July 29, September 28 and October 12, 2010. *Id.* ¶ 41. During the hearing T-Mobile presented evidence in support of its application. *Id.* ¶ 42. T-Mobile argued that it had a significant gap in coverage and that the Proposed Facility was necessary to close the gap. *Id.* ¶ 14; *see also* Pl.'s Mem. in Supp. of Mot. for Summ. J. 4, ECF No. 17-1 [hereinafter Pl.'s MSJ Mem.]. T-Mobile also claimed that it had unsuccessfully explored a number of potential sites for the construction of the communication tower and antenna, namely the Glenelg High School, the Walnut Springs Nursery, the Gethsemane Baptist Church and the Amateur "Ham" Towers, each rejecting its request. Pl.'s Compl. ¶¶ 17-26, 43-51; *see also* Pl.'s MSJ Mem. 5-7, ECF No. 17-1. Furthermore, T-Mobile presented testimony that there would be no impact on the property values in the area. Bd. of Appeals Decision and Order, ¶ 13, at 6, ECF No. 1-3.

However, T-Mobile's Proposed Facility was met with community opposition. The President of the Glenwood Estates Homeowner's Association testified that the community opposed the construction of the Proposed Facility in the area. Bd. of Appeals Decision and Order, ¶ 15, at 7. Sharon Keeny, a real estate agent, testified that cell towers lowered the property values of nearby properties and also extend the time during which a property was

4

on the market.  *Id.* ¶ 16.  The testimony presented by James Brent, a software engineer, indicated that T-Mobile could increase coverage in the area "by placing directional antennae on existing towers within the search range area."  *Id.* ¶ 17.  Additionally, a nearby resident testified that T-Mobile's "revised landscape plan . . . [would] negatively impact sight distance at an already troubled intersection of Hobbs and Burntwoods Road."  *Id.* ¶ 18.  Finally, two individuals respectively testified that (a) the Proposed Facility was "not in harmony with the land uses and policies" of the Howard County General Plan and (b) T-Mobile "did not make a legitimate effort to locate the proposed communication facility on an existing structure or at another site."  *Id.* ¶¶ 19-20, at 7-8.

On February 16, 2011, the Board denied T-Mobile's appeal and affirmed the Hearing Examiner's decision.  Bd. of Appeals Decision and Order, ECF No. 1-3.  In a twelve-page decision and order, the Board found that T-Mobile did not comply with the requirements of Sections 131.B.2.d and 131.N.14.b.(1) in that it failed to "meet its burden of production and persuasion of demonstrating that [(1)] the ingress and egress drive will provide safe access with adequate sight distance, based on actual conditions . . . [and (2)] a diligent effort has been made to locate the proposed communication facility on a government structure . . ."  Bd. of Appeals Decision and Order 10-11, ECF No. 1-3.

As a result, T-Mobile filed the Complaint in this case on March 18, 2011 alleging in Counts I and III that the Board's denial was not supported by substantial evidence in violation of Section 332(c)(7)(B)(iii) of the Telecommunications Act of 1996 as amended ("TCA"), 47 U.S.C. § 332, and Maryland law.  Pl.'s Compl., ¶¶ 60-66, 77-82.  Additionally,

Count II alleges that the Board's decision had the effect of prohibiting the provision of personal wireless services in violation of Section 332(c)(7)(B)(i)(II) of the TCA. *Id.* ¶¶ 77-67-76. T-Mobile seeks an injunction ordering the Board to grant its petition for the construction of the Proposed Facility and all ancillary permits, including, without limitation the Conditional Use for which T-Mobile applied. *Id.* ¶ 83. T-Mobile also seeks a judgment declaring that the Board's decision violated the TCA and Maryland law. *Id.*

After a period of discovery, the parties filed cross-motions for summary judgment. A hearing was held on March 27, 2012 pursuant to Local Rule 105.6 (D. Md. 2011).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the record "in the light most favorable to the nonmoving party." *Bryant v. Bell Atlantic Md. Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert denied*, 540 U.S. 822 (2003); *see also havePower LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §

2720 (3d ed. 1983)).

Pursuant to Rule 56, the moving party may prevail by demonstrating that there is a lack of evidence submitted by the opposing party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The nonmoving party opposing summary judgment must proffer specific facts or objective evidence showing that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

## ANALYSIS

"The Telecommunications Act of 1996 ("TCA") requires that a local government's denial of a request to place "personal wireless service facilities" be supported by substantial evidence, and not "have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. §§ 332(c)(7)(B)(i)(II) & 332(c)(7)(B)(iii)." *New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Supervisors*, No. 10-2381, --- F.3d ----, 2012 WL 922435, at *1 (4th Cir. Mar. 19, 2012).   In three recent opinions, the United States Court of Appeals for the Fourth Circuit has restated the applicable law involved in challenges under the TCA. *See T-Mobile Northeast LLC, v. City Council of the City of Newport News, et al.*, No. 11-1293, --- F.3d ----, 2012 WL 990555 (4th Cir. Mar. 26, 2012); *New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Sup'rs*, No. 10-2381, --- F.3d ----, 2012 WL 922435 (4th Cir. Mar. 19, 2012); *T-Mobile Northeast LLC v. Fairfax Cnty. Bd. of Sup'rs*, No. 11-1060, --- F.3d ----, 2012 WL 664504 (4th Cir. Mar. 1, 2012).

I.    **The Substantial Evidence Requirement (Counts I & III)**

Summary judgment in favor of Defendant Howard County Board of Appeals ("the Board") is appropriate where its decision to deny T-Mobile Northeast LLC's ("T-Mobile") conditional use petition is in writing and supported by substantial evidence in the record pursuant to 47 U.S.C. § 332(c)(7)(B)(iii). T-Mobile argues, however, that the Board's denial is not supported by substantial evidence in violation of Section § 332(c)(7)(B)(iii) (Count I) and Maryland law (Count III).

This Court has previously noted that "in order for a zoning board['s] decision to satisfy the TCA's substantial evidence test, the challenged decision [must] accord with applicable local zoning law." *T-Mobile Northeast LLC v. Frederick Cnty. Bd. of Appeals*, 761 F. Supp. 2d 282, 286 (D. Md. 2010) (citing *T–Mobile Cent., LLC v. Wyandotte* County, 546 F.3d 1299, 1307 (10th Cir. 2008); *Metro PCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 723–724 (9th Cir. 2005); *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 495 (2d Cir. 1999)). Accordingly, the claims set forth by T-Mobile in Counts I and III merge for purposes of the inquiry into whether the Board's decision satisfies the substantial evidence requirement. *T-Mobile Northeast LLC*, 761 F. Supp. 2d at 286.

"Subsection (B)(iii) of the [Telecommunications Act], commonly termed the "substantial evidence requirement," mandates that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence. . . ." 47 U.S.C. § 332(c)(7)(B)(iii). *New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Supervisors*,

No. 10-2381, --- F.3d ----, 2012 WL 922435, at *3 (4th Cir. Mar. 19, 2012).  While substantial evidence is "more than a mere scintilla, but less than a preponderance, it includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *AT&T Wireless PCS, Inc. v. City Council of the City of Va. Beach*, 155 F.3d 423, 430 (4th Cir. 1998) [hereinafter *AT&T v. Virginia Beach*].  "[A] reasonable mind is the mind of a reasonable legislator."  *T-Mobile Northeast LLC v. City Council of the City of Newport News, et al.*, No. 11-1293, --- F.3d ----, 2012 WL 990555, at *4 (4th Cir. Mar. 26, 2012).  However, the Fourth Circuit has noted that "[a] court is not free to substitute its judgment for the [board's]; it must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter."  *AT&T v. Virginia Beach*, 155 F.3d at 430 (*quoting NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997)). As the Fourth Circuit has recently instructed, this Court must only determine "whether the denial—not the application itself—is supported by substantial evidence."  *T-Mobile Northeast LL, v. City Council of the City of Newport News, et al.*, No. 11-1293, --- F.3d ----, 2012 WL 990555, at *4 (4th Cir. Mar. 26, 2012).  "[A] proposed telecommunications facility's inconsistency with local zoning requirements can be sufficient to establish substantial evidence supporting the denial of a zoning application."  *New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Sup'rs*, No. 10-283, 2010 WL 4702370, at *4 (Nov. 10, 2010).

In this case, the Howard County Zoning Regulations ("Zoning Regulations" or "HCZR") require for the issuance of a conditional use permit for telecommunication facilities that the applicant make a diligent effort to locate the proposed facility on a

9

government structure and also that there be proof that "ingress and egress drives will provide safe access with adequate sight distance, based on actual conditions. . ." HCZR §§ 131.B.2.d, 131.N.14.b.(1).   However, the Board held that T-Mobile did not sufficiently comply with the "diligent effort" requirement and that it was "unable to make a determination that the ingress and egress drive will provide safe access with adequate sight distance, based on actual conditions."  Bd. of Appeals Decision and Order 10-11, ECF No. 1-3.

## A.  The "Diligent Effort" Requirement

In its challenge to the Board's decision regarding the "diligent effort" requirement, T-Mobile argues that the Board ignored the testimony offered by Mearl Kemberling ("Kemberling"), T-Mobile's telecommunications real estate consultant.  Specifically, it argues that the Board failed to give appropriate weight to a letter from the Howard County Public School System responding to a request from T-Mobile's lawyer to document the denial of its initial telephone request.   Pl.'s Mem. in Supp. of Mot. for Summ. J. 2, ECF No. 17-1 [hereinafter Pl.'s MSJ Mem.].  While T-Mobile also contacted the Walnut Springs Nursery, the Gethsemane Baptist Church and the Amateur "Ham" Towers, the Board appropriately placed its focus on one telephone call and a one sentence letter.  Specifically, the Board focused on the evidence concerning Kemberling's telephone call to an unidentified individual of the Howard County Public School System.  This phone call concerned T-Mobile's request to locate the Proposed Facility at the Glenelg High School.  It is undisputed in the record that this remains the only government structure investigated by T-Mobile.

10

The record reflects that Kemberling contacted the Howard County School System's Facilities Planning and Management office by telephone on January 31, 2009.  Kemberling Aff. ¶ 1, ECF No. 17-11.  Although Kemberling indicated that an individual named Ken Roey was the head of that office, he could not identify the person with whom he spoke that day.  *Id.*  However, he explained that his request was denied during that telephone conversation.  *Id.*  His affidavit also indicates that it is a common industry practice to meet landlords in person or by phone and only follow up with written information once the landlord indicates an interest.  *Id.* ¶ 5.

During the hearings before the Board, Hillorie Morrison ("Morrison"), a T-Mobile consultant on the site acquisition team, indicated that the team approached the Howard County Public School System regarding the possibility of "putting antennas on an existing light pole or replacing one" on the Glenelg High School property.  Pl. Ex. L, July 29 Hr'g Tr. 80, ECF No. 17-13 [hereinafter July 29, 2010 Hr'g Tr.].  When asked about the identity of the person contacted, she answered that she thought it was "Roey's office in Facilities Management" but was unable to name the actual individual concerned.  *Id.* at 80, 82.  Additionally, Morrison indicated that she was unaware of the Howard County Public School System Policy no. 6060 concerning procedures to follow in order to place a telecommunication structure on school system property.  *Id.* at 80-81.  When informed that the policy required the provision of a written request and proposal which would be reviewed by the Chief Facility Officer, Morrison acknowledged that no such request had been submitted.  *Id.* at 82, 86.

The record also reflects that on October 11, 2010, Teresa Alban, the Chief Operating Officer of the Howard County Public School System, responded to a request from Sean Hughes, counsel for T-Mobile.  Pl.'s Ex. I, HCPSS Ltr., ECF No. 17-10.  That request was to provide "a written statement" with respect to the earlier denial in the telephone call of T-Mobile's request "to put a cell phone tower on school system property."  *Id.*  As T-Mobile clearly did not follow procedures requiring a written request and proposal, there is no other documentation with respect to the denial.  This one-sentence responsive letter provides little support for T-Mobile's challenge to the Board's decision.

At the motions hearing before this Court on March 27, 2012, counsel for T-Mobile argued that Kemberling's telephone call to the Facilities Planning and Management office and the rejection of their request documented in the school system's letter supported a finding that T-Mobile made diligent efforts to locate the facility on the Glenelg property.  Mot. Hr'g, ECF No. 26.  However, when questioned about whether Kemberling's request to an unindentified person with unknown authority to approve the proposed facility was consistent with T-Mobile standards, counsel for T-Mobile acknowledged to this Court that it was not.  Specifically, counsel acknowledged that the process undertaken in this case did not meet the usual standards employed by T-Mobile.  Nevertheless, counsel contended that the letter from the school system was an unequivocal denial of their proposal.

In reviewing this letter, this Court has noted that it was issued in response to T-Mobile counsel's request "to provide a written statement."  Furthermore, Mr. Kemberling was not copied on this letter.  This one sentence letter is simply a response to a request by

counsel for T-Mobile in an effort to create some sort of written record to satisfy the "diligent effort" requirement of the Zoning Regulations.

In summary, the evidence indicates that T-Mobile only made one telephone call to an unidentified person in the Facilities Planning and Management office of the Howard County Public School System. Although T-Mobile received a verbal rejection to its proposition, it was unable to demonstrate that the person to whom Kemberling spoke had any authority to deny its request. Moreover, T-Mobile acknowledged that it failed to comply with the Howard County Public School System policy of submitting written requests to place telecommunication facilities on school grounds. Finally, while the letter sent by the school system rejects T-Mobile's request, it was issued after the hearings before the Board of Appeals had already begun and did not contain any specifics as to the request. As such, the Board's decision to deny T-Mobile's conditional use petition on the basis that it did not meet the "diligent effort" requirement imposed by section 131.N.14.b.(1) of the Howard County Zoning Regulations is clearly supported by the record in this case.

### B. <u>Safety of Access</u>

As stated *supra*, in denying T-Mobile's conditional use petition the Board additionally stated that it was "unable to make a determination that the ingress and egress drive will provide safe access with adequate sight distance, based on actual conditions." Bd. of Appeals Decision and Order 10, ECF No. 1-3. According to T-Mobile, this decision was also not supported by substantial evidence.

First, T-Mobile argued that the Technical Staff Report issued by the Howard County

Department of Planning and Zoning, clearly stated that this requirement imposed by section 131.B.2.d of the Howard County Zoning Regulations was "inapplicable to this use."  Pl.'s Ex. C, Technical Staff Report § IV.A.5, ECF No. 17-4.   Even if applicable, T-Mobile contended that the report indicated that "sight distance from the driveway entrance at Burntwoods Road is over 250 feet to the northeast and over 400 feet to the southwest." *Id.* § II.C.  The report further noted that "[s]ight distance is not considered to be an issue due to the nature of the proposed use." *Id.*  Second, T-Mobile noted that the Howard County Board of Appeals Hearing Examiner found that "the driveway appears to provide safe access, with adequate sight distance."  Pl.'s Ex. D, Hr'g Examiner Decision and Order 16, ECF No. 17-5.  Third, according to T-Mobile, the Board acknowledged in its decision that "the proposed use would generate a very lower number of vehicle trips."  Bd. of Appeals' Decision and Order 10, ECF No. 1-3.  Moreover, T-Mobile claimed that it presented evidence that the increased traffic would be that of one or two technicians, to perform general maintenance, less than once a month, traveling in "an SUV or a little van."  July 29, 2010 H'rg Tr. at 73, ECF No. 17-13.  Finally, T-Mobile contended that because the church on the property was granted a special exception[1] in 1980, a finding that adequate sight distance existed had already been made.  Additionally, T-Mobile indicated that the record reflected that opponents to its petition did not take issue with the sight distance factor.

During the hearing before this Court, the Board acknowledged that adequate sight distance existed, but it reiterated its position that there was no evidence from which it could

---

[1] The term "special exception" was previously used in Howard County to refer to present day "conditional uses." *See* HCZR § 103.A.27.

conclude that access to the proposed facility was safe.  Mar. 27, 2012 Mot. H'rg, ECF No. 26.  Specifically, the Board noted that T-Mobile had the burden to present evidence of the safety of ingress and egress and not merely rely on existing use.  For example, the Board noted that T-Mobile did not present evidence from a traffic engineer concerning the safety of the access.  However, the record included testimony in opposition indicating that T-Mobile's "revised landscape plan . . . will negatively impact sight distance at an already troubled intersection of Hobbs and Burntwoods Roads."  Bd. of Appeals Decision and Order, ¶ 18, ECF No. 1-3.  The Board further contended that the existence of a special exception since 1980 was not demonstrative of the safety of the access as such a requirement might not have been imposed on the issuance of special exceptions at the time.  Consequently, the Board concluded that T-Mobile "simply assumed that what already existed . . . was safe and adequate" without demonstrating that it was.  Def.'s Reply in Supp. of Bd.'s Mot. for Summ. J. 6, ECF No. 22.

A review of the record reflects that it certainly contains substantial evidence that the sight distance is adequate.  Nevertheless, regardless of the evidence that a church is currently using the property and that the proposed facility would only result in one more ingress and egress a month by one or two individuals, T-Mobile failed to provide specific and explicit evidence that the "ingress and egress drives will provide safe access."  Moreover, the Board is not required to defer to the findings of the Technical Staff Report produced by the Howard County Department of Planning and Zoning.  *See* Howard County Code, § 16.801(c)(7).  Thus, the Board is permitted to review T-Mobile's evidence in light of section

131.B.2.d of the Zoning Regulations despite the Planning and Zoning Department's finding that it is inapplicable.

On this issue of safety, this Court might perhaps be inclined to make a finding that the record implicitly demonstrates safety of access, however this Court "must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter." *AT & T v. Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998). T-Mobile did not provide the Board with studies and/or testimony as to safety of access. This led the Board to conclude that it was unable to make a safety determination. Consequently, the Board's decision to deny T-Mobile's conditional use petition on the basis that it did not provide evidence concerning safe access pursuant to section 131.B.2.d of the Zoning Regulations was supported by substantial evidence.

As there is no genuine dispute of material fact and because the Board's denial of T-Mobile's conditional use petition was in writing and supported by substantial evidence in the record pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), the Board is entitled to summary judgment as to Counts I and III.

## II.     Prohibition of Wireless Services (Count II)

In Count II of the Complaint, T-Mobile alleges that the Board's decision had the "effect of prohibiting the provision of personal wireless service" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). In one of its recent opinions the Fourth Circuit has reaffirmed prior precedent regarding the standard for review of claims under Section 332(c)(7)(B)(i)(II) of the Telecommunications Act ("TCA") alleging prohibition of personal wireless services. *T-*

*Mobile Northeast LLC v. Fairfax County Board of Supervisors*, No. 11-1060, --- F.3d ----, 2012 WL 664504, at *4-6 (4th Cir. Mar. 1, 2012) [hereinafter *T-Mobile v. Fairfax Cnty.*].   First, it emphasized that the plaintiff bears a very heavy burden to prove violations of subsection (B)(i)(II) as the section is not violated where "a local governing body's decision merely limits the level of wireless services available because . . . [the TCA] cannot guarantee 100 percent coverage." *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *6 (citing *360 Degrees Comm'n Co. of C'Ville v. Bd. of Sup'rs of Albemarle Cnty.*, 211 F.3d 79, 87-88 (4th Cir. 2000) [hereinafter *Albemarle Cnty.*]).   Second, the Fourth Circuit explained that in order to prevail on such a claim, the plaintiff must either demonstrate that (1) "a local governing body has a general policy that essentially guarantees rejection of all wireless facility applications," or (2) "the denial of an application for one particular site is "tantamount" to a general prohibition of service." *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *5, 7 (citing *Albemarle Cnty.*, 211 F.3d at 86-88; *AT&T Wireless PCS, Inc. v. City Council of City of Va. Beach*, 155 F.3d 423, 429 (4th Cir. 1998)).

In this case, T-Mobile has clearly not demonstrated that a general policy guaranteeing the rejection of all wireless facility applications exists, but rather claims that the Board's denial amounts to a general prohibition.  To assert a claim under this prong, the "plaintiff must show [(a)] a legally cognizable deficit in coverage amounting to an effective absence of coverage, . . . [(b)] that it lacks reasonable alternative sites to provide coverage . . . [and (c)] that further reasonable efforts to gain approval for alternative facilities would be fruitless." *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *7 (quoting *USCOC of Va. RSA# 3, Inc. v.*

*Montgomery Cnty. Bd. of Sup'rs*, 343 F.3d 262, 269 (4th Cir.2003); *Albemarle Cnty.*, 211 F.3d at 87-88) (internal quotation marks omitted).

As to the first factor, the record must clearly demonstrate that there is an absence of service in a particular part of the country. *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *7. With respect to the "absence of reasonable alternatives" inquiry, the Fourth Circuit "specifically rejected" the least intrusive means standard and required that the record "contain sufficient evidence to establish that no alternative locations are available to host the proposed facility." *Id.* at *5, 7. "[G]eneral conclusions regarding the feasibility of alternative locations, including repeating assertions that the locations 'would not close the gap'" are insufficient to allow a provider to meet its burden under this prong. *Id.* at *7. Finally, the last factor is satisfied where the plaintiff provides evidence that future "efforts would be so likely to be fruitless that it [would be] a waste of time to try." *New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Sup'rs*, No. 10-2381, --- F.3d ----, 2012 WL 922435, at *6 (4th Cir. Mar. 19, 2012) (quoting *Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999)) (internal quotation marks omitted).  Evidence that is "speculative and without any factual basis in the record . . . [does] not establish[ ] that it would be "*likely*" that an application would fail." *Id.* (emphasis in original).  Significantly, in the context of this case, the Fourth Circuit has noted the importance of past approval of applications. Specifically, the court has recognized that evidence that "the governing body has approved numerous applications for other wireless facilities, including several filed by the provider

18

asserting violation of the Act" will tend to indicate that future efforts will not be fruitless.  *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *7-8; *see also Albemarle County*, 211 F.3d at 88.

T-Mobile failed to demonstrate that future efforts would be "fruitless."  The Board indicated that it has a "history of granting conditional use petitions by T-Mobile to construct communication towers on residentially zoned property." Def.'s Mem. in Supp. of Mot. for Summ. J. 10, ECF No. 20-1.  Particularly, over the past three years, T-Mobile has made six applications for conditional use permits in residential districts, each of which has been approved except for the one in question in this case.  *Id.*  Furthermore, the Board indicated during the hearing before this Court that T-Mobile has twenty-four months after the issuance of the Board's denial to submit a new petition.  Mar. 27, 2012 Mot. Hr'g, ECF No. 26.  As such, T-Mobile cannot show that its future efforts to obtain this permit will be fruitless.  Moreover, in light of the fact that T-Mobile never submitted the required application to the Howard County Public School System with respect to placing antennas or the telecommunication facility on the Glenelg High School premises, it cannot conclusively show that it lacks reasonable alternatives.

Finally, T-Mobile argues that it presented sufficient evidence to demonstrate that it has a significant gap in its coverage along Burntwoods Road, Danmark Drive, Sharp Road, Roscommon Drive and Hobbs Road, as well as in the developed surrounding residential neighborhoods.  However, the record indicates that T-Mobile already has numerous communication towers and antennas in the area.  Pl.'s Ex. F, Surrounding Wireless Facilities Map, ECF No. 17-7.  Moreover, the T-Mobile's Radio Frequency Expert Richard Conroy

acknowledged in his testimony before the Board that while T-Mobile had unreliable coverage in the area, coverage was not completely lacking. *See* Pl.'s Ex. P, Conroy Dep. 15-17, ECF No. 17-17; *see also* Pl.'s Ex. O, Conroy Report. 11, ECF No. 17-16.   T-Mobile also presented evidence that whereas it sought to keep the drop call rate below or equal to 2 percent, Conroy had catalogued rates of 5.42 percent, 6.26 percent and 2.68 percent in the area over a three months period.   Conroy Dep. at 37-40.   Nevertheless, Conroy also acknowledged that these higher rates could be attributed to the terrain.   *Id.*   Additionally, his report and his deposition indicate that four surrounding sites had dropped call rates between 1.03 and 1.68 percent.   *Id.*; *see also* Conroy Report at 19-22.   Because the record does not clearly demonstrate an absence of service in this area, *T-Mobile v. Fairfax Cnty.*, 2012 WL 664504, at *7, T-Mobile has failed to demonstrate that there is a legally cognizable gap in service in that area.   Alternatively, even if T-Mobile conclusively demonstrated an absence in service, it could not demonstrate based on this record that it lacks reasonable alternatives and that future efforts would be fruitless.

Accordingly, there is no genuine dispute of material fact and T-Mobile fails to satisfy its burden to demonstrate that the Board's denial had the "effect of prohibiting the provision of personal wireless service" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).   As such, the Board is entitled to summary judgment as to Count II.

## CONCLUSION

For the reasons stated above, Plaintiff T-Mobile Northeast LLC's Motion for Summary Judgment (ECF No. 17) is DENIED.  Defendant Howard County Board of Appeals' Cross-Motion for Summary Judgment (ECF No. 20) is GRANTED and judgment is entered in favor of Defendant.

A separate Order follows.

Dated:        March 30, 2012              /s/_____

                                          Richard D. Bennett
                                          United States District Judge